J-S18016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: K.V., A MINOR | : IN THE SUPERIOR COURT OF |
| | :  PENNSYLVANIA |
| | : |
| APPEAL OF: H.C., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 6 MDA 2026 |

Appeal from the Decree Entered November 24, 2025
In the Court of Common Pleas of Susquehanna County Orphans' Court at
No(s):  ADOPT-006-2025

| | |
|---|---|
| IN RE: R.C., A MINOR | : IN THE SUPERIOR COURT OF |
| | :  PENNSYLVANIA |
| | : |
| APPEAL OF: H.C., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 222 MDA 2026 |

Appeal from the Decree Entered November 24, 2025
In the Court of Common Pleas of Susquehanna County Orphans' Court at
No(s):  ADOPT-007-2025

| | |
|---|---|
| IN RE: D.C., A MINOR | : IN THE SUPERIOR COURT OF |
| | :  PENNSYLVANIA |
| | : |
| APPEAL OF: H.C., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 223 MDA 2026 |

Appeal from the Decree Entered November 24, 2025
In the Court of Common Pleas of Susquehanna County Orphans' Court at
No(s):  ADOPT-008-2025

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                                    **FILED: MAY 19, 2026**

H.C. ("Mother") appeals from the decrees entered by the Susquehanna County Court of Common Pleas ("orphans' court") terminating her parental rights to R.C., born in February 2020, K.V., born in February 2021, and D.C., born in May 2022 (collectively, "Children"), pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (b).[1]  Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights, we affirm.

Susquehanna County Children and Youth Services ("CYS") began working with the family at the beginning of October 2022 after a general protective service intake report expressed concerns regarding Mother's and Father's mental health and use of controlled substances.  The report indicated that Mother was using methamphetamine, suffering from paranoia, and unable to provide for the basic needs of Children, including food and diapers. In response to the report, CYS caseworker Deanna Wasko ("Wasko") attempted to contact Mother several times in the beginning of October 2022 but was unable to do so.  On October 12, 2022, Wasko finally reached Mother at her home, but she refused a urine screen and also refused to allow Wasko into the home to see Children.  Two days later, Children's maternal grandmother informed Wasko that Mother and Children were without food. Wasko returned to Mother's residence with the Susquehanna County Sheriff's

---

[1] The orphans' court also terminated the parental rights of K.V. ("Father") on the same date.  He is not a party to this appeal.

Department that same day. Mother again refused to cooperate, but Wasko was able to see R.C. from the doorway and observed that both he and Mother were in a state of poor hygiene. When Wasko asked Mother if she had any food in the home for Children, Mother admitted that she did not. On October 25, 2022, Mother received notice that she was being evicted from her residence because she was unable to pay her rent and because her landlord was concerned with Mother's drug use. Wasko discovered that Children's maternal grandmother had been paying Mother's rent.

CYS obtained custody of Children through the dependency court on October 31, 2022. Following a hearing on November 2, 2022, the court found Children dependent and initially placed them together in kinship care with their paternal uncle, but CYS ultimately separated Children after the uncle was unable to care for them. The dependency court ordered Mother to have a minimum of three hours of supervised visitation with Children each week at the CYS office. The court also ordered Mother to comply with the following: (1) complete a mental health evaluation and follow through with treatment recommendations until discharged by the provider; (2) complete a drug and alcohol evaluation and follow all treatment recommendations; (3) submit to random and scheduled urine drug screens; (4) cooperate and actively engage with CYS services; (5) sign all releases with CYS and service providers; (6) successfully complete a CYS-approved parenting program; and (7) acquire adequate and stable housing.

On February 2, 2023, the dependency court held a permanency review hearing after which it found Mother was minimally compliant with her permanency plan and had made no progress toward alleviating the circumstances that led to Children's placement. The court determined that while she attended most of her supervised visits with Children, she was not cooperative, respectful, or appropriate during the visits, was often combative, and appeared to be under the influence of drugs. Mother had also refused to consent to drug screens and had failed to schedule mental health and drug and alcohol evaluations. Further, Mother's parenting program unsuccessfully discharged her for failing to participate in the program. Mother was also homeless at this time.

Following the May 18, 2023, and August 24, 2023 permanency review hearings, the dependency court again found that Mother in minimal compliance with the permanency plan and had made no progress toward alleviating the circumstances that led to Children's placement. Her circumstances at these hearings were nearly identical to the February 2, 2023 permanency review hearing. Mother was living in her car and selling nude photographs of herself for money. It was not until the February 2, 2024 hearing that the court heard evidence that Mother had voluntarily submitted to two drug screens, both of which were negative. The dependency court otherwise found, however, that Mother had minimal to no compliance with remainder of the permanency plan and had made no progress toward

alleviating the circumstances that led to Children's placement. This continued through the June 28, 2024 and December 13, 2024 permanency review hearings. Notably, Mother's visitation with Children became less regular during these review periods. There was also evidence at the December 13, 2024 hearing that Mother had been criminally charged for, and found guilty of, harassing the CYS caseworker.

On April 14, 2024, CYS filed a petition to involuntarily terminate Mother's parental rights to Children. On June 20, 2025, August 29, 2025, and November 14, 2025, the orphans' court held hearings on the termination petition.[2] On November 24, 2025, the orphans' court issued a decree involuntarily terminating the parental rights of Mother. Mother timely appealed to this Court. Both Mother and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925. Mother presents the following issues for review:

> A. Whether the [orphans' court] erred as a matter of law and/or manifestly abused its discretion in determining [CYS] presented sufficient evidence to satisfy the grounds for termination [of] Mother's parental rights under [section] 2511 (a)(2) of the Adoption Act?

> B. Whether the [orphans' court] erred as a matter of law and/or manifestly abused its discretion in determining [CYS] presented sufficient evidence to satisfy the grounds for termination [of] Mother's parental rights under [section] 2511 (a)(5) of the Adoption Act?

---

[2] At the termination hearings, Children had two different attorneys serving as guardian ad litem and representing their legal interests, respectively. **See** N.T., 11/14/2025, at 178-79.

C.      Even if this Court determines [CYS] presented sufficient evidence to satisfy the grounds for termination of Mother's parental rights under [sections] 2511(a)(2) and 2511(a)(5) of the Adoption Act, whether the [orphans' court] nevertheless erred as a matter of law and/or manifestly abused its discretion in determining termination of Mother's parental rights is in the best interest [Children]?

Mother's Brief at 9.

Mother challenges the termination of her parental rights.  In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law.  That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion.  An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.  Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand.  We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings.  However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

***In re Adoption of C.M.***, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis. *See id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court must then assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Mother's rights to Children pursuant to subsections (2) and (5) of section 2511(a). "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on subsection (a)(2), which provides as grounds for termination of a parent's rights:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

As this Court has explained, termination of a parent's rights pursuant to section 2511(a)(2) requires that the petitioner show, by clear and convincing evidence, that the parent is presently unable to care for the child and will not be able to care for him for the foreseeable future. **Int. of A.R.**, 311 A.3d 1105, 1112 (Pa. Super. 2023).

> A child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. When a parent has demonstrated a continued inability to conduct her life in a manner conducive to providing a safe environment for a child, and the behavior is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

**Id.** at 1111.

The orphans' court found termination was warranted under section 2511(a)(2). **See** Orphans' Court Opinion, 11/24/2025, at 23-26. The court explained that Mother did not obtain any drug and alcohol treatment, repeatedly refused drug screens, and in fact, admittedly continued to use controlled substances throughout the dependency proceedings. **Id.** at 23. The court also found that she did not address her mental health concerns and repeatedly failed to complete the required parenting program. **Id.** at 23-24.

The court determined that Mother failed to find suitable housing for Children despite more than three years having passed since the placement of Children, as she has remained homeless throughout most of the dependency process. *Id.* at 25. In short, the orphans' court concluded that Mother demonstrated no commitment to working with CYS to address the issues that led to the removal of Children. It therefore found that the record clearly and convincingly demonstrates that Mother "lacks the capacity to provide the essential care, control, and subsistence to meet the needs of [Children]" and that she "cannot or will not take the steps necessary to obtain the skills necessary to provide for the care, control and subsistence of [Children]." *Id.*

Mother argues that the orphans' court abused its discretion by terminating her parental rights pursuant to section 2511(a)(2) the court's decision was solely based on "environmental factors" beyond her control. *See* Mother's Brief at 24. Specifically, Mother contends that her visits with Children were inconsistent because she lacked transportation and cell phone service, and that she was unable to obtain or complete drug and alcohol or mental health treatment because her health insurance lapsed and she could not afford the out-of-pocket cost of treatment. *Id.* at 19-22.

The record reflects that at the time of the termination hearing, Children had been removed from Mother's care for thirty-one months. N.T., 6/20/2025, at 49. At the termination hearing, Wasko testified that Children were removed from Mother's care because of "[s]ignificant concerns for [her]

mental health, drug and alcohol use, paranoia, parenting and also … she was in the process of being evicted from her home and she would have been homeless." *Id.* at 8. Wasko stated that throughout the life of the dependency case, Mother made little-to-no progress toward alleviating the conditions that led to Children's removal. *Id.* at 10. Mother never provided CYS with any documentation that she had engaged in or completed any drug and alcohol or mental health treatment, she tested positive for methamphetamines shortly after Children's removal, and thereafter refused testing throughout almost the entirety of the dependency proceedings. *Id.* at 18, 21, 27, 34. In fact, Mother had a positive drug screen the day before the June 20, 2025 termination hearing; Mother did not deny that she continued to use controlled substances. *Id.* at 110; N.T., 11/14/2025, at 146-47.

Wasko further testified that Mother failed to complete any parenting classes and had been unsuccessfully discharged from a parenting program on two occasions. N.T., 6/20/2025, at 100; N.T., 11/14/2025, at 98. CYS likewise did not receive any evidence that Mother had obtained housing; during the termination hearing, Mother could not provide an address other than stating she was living in the "Oakland Trailer Park," in a borrowed, movable trailer. N.T., 6/20/2025, at 100; N.T., 11/14/2025, at 98, 149-51. Regarding visitation, Wasko testified that Mother's attendance was inconsistent, she would often no-show for visits, and that, at times, appeared

to be under the influence when she did attend visits. N.T., 6/20/2025, at 43-44, 104.[3]

Although Mother is correct that termination cannot be based solely upon "environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent," 23 Pa.C.S. § 2511(b), the record belies her claim that this was what occurred here. Wasko testified that Mother never requested assistance with obtaining medical insurance or transportation to visits with Children; CYS has programs in place to assist parents with transportation, but it requires the parent to notify CYS that this is a barrier. *Id.* at 102-04. Although Mother testified that she did request this assistance from CYS, *see* N.T., 11/14/2025, at 103-118, 133-35, the orphans' court found Wasko credible. We emphasize that the orphans' court is the arbiter of credibility, and we are therefore bound by that determination. *See C.M.*, 255 A.3d at 358-59.

Based on the foregoing, our standard of review, and the orphans' court's credibility determinations, the evidence of record shows that Mother cannot presently parent Children and will be unable to do so for the foreseeable future. *See A.R.*, 311 A.3d at 1112. Mother "has demonstrated a continued inability to conduct her life in a manner conducive to providing a safe

---

[3] The testimony of Brittany Smith, who became Children's CYS caseworker in December 2024 corroborated much of Wasko's testimony. *See* N.T., 8/29/2025, at 7-25.

environment for a child, and the behavior is irremediable as supported by clear and competent evidence." *Id.* at 1111. We therefore find no abuse of discretion in the orphans' court's finding that CYF presented clear and convincing evidence in support of termination pursuant to section 2511(a)(2).

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to section 2511(b). Section 2511(b) provides that when terminating a parent's rights to a child, the court must "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the orphans' court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing upon the "child's development, and mental and emotional health," the orphans' court should

assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Thus, a court must examine the matter from the child's perspective, placing his "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105. Our Supreme Court has cautioned that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at

268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105.

With respect to its needs and welfare analysis, the orphans' court explained:

> … Over the three years [following removal, Children] have formed a close and loving relationship with their foster parents. [Children] are thriving in their foster homes. The foster parents have provided stability and security to [Children] which was something that they lacked when living with Mother … and something that Mother … had demonstrated that [she lacks] the ability to provide. Indeed, [Children] were very young when they were removed from Mother … and all [Children] have spent more time with their foster families than they have spent with Mother … throughout their entire lives.… In other words, the foster parents have become the parents of [Children]—and the foster homes have become their homes.
>
> [Children] still maintain a bond with Mother[, but] view their foster parents as their providers and caregivers—and see Mother … as simply a more distant relative whom they have sporadic and limited contact. While [Children] may enjoy spending time with Mother …, this emotional connection does not rise to the level of a parental bond; rather, it is simply an emotional attachment that a child would have with any distant relative, family friend, or caregiver with whom [Children] spend a regular amount of time. [Children] simply no longer view Mother … as [a parent]—just people that they know and get to visit.
>
> The guardian ad litem has opined that it would be in the [Children]'s best interest to terminate the parental rights of Mother…. Counsel for [Children] indicated that [they] are so young that they have no stated interest. This determination speaks to the difficulties associated with not terminating the parental rights of Mother …. If [Children] were ripped from their foster homes, they would lose the only family unit that they have consciously ever known in their short lives. [Children] do not understand these proceedings—but they understand that their foster parents are their parents—and the only persons performing

- 14 -

parental duties for them for the past three years. … For these reasons, upon reviewing the totality of the circumstances, it is clearly in the best interest of [Children] to terminate the parental rights of Mother … and to allow [Children] to be adopted by their foster parents.

Orphans' Court Opinion, 11/24/2025, at 32-33.

Mother argues that the orphans' court erred in this regard because termination would not serve the best interests of Children. Mother's Brief at 29-31. In support of this claim, Mother asserts that she shares a "clear bond" with Children. *Id.* at 30. She contends that Children "enjoy spending time with Mother" and when they see her, "they run up to her, hug and kiss Mother, and refer to Mother as 'Mommy' when in Mother's presence." *Id.* Mother therefore contends that "[w]hile it is true that [Childrens'] foster parents have provided stability and security during their time in placement, [CYS] failed to demonstrate that that the best interest of [Children] would be served by terminating Mother's parental rights." *Id.*

The record reflects that at the time of the termination hearing, K.V. and D.C. were ages four and three, respectively, and had resided with their foster mother, who they refer to as "mom," for approximately three years. N.T., 11/14/2026, at 51-52. They both attend preschool, do not have any special intellectual, developmental, or physical needs, are up to date on their medical and dental appointments, and are doing very well. *Id.* at 52-53. K.V. and D.C. have two substantially older foster siblings with whom they have a positive and loving relationship. *Id.* at 53. K.V. and D.C.'s foster mother

testified that she has an "extremely flexible" job that allows her to tend to all her children's needs. *Id.* at 55.

As to R.C., he was five years old at the time of the termination proceedings and had resided with his foster parents, whom he refers to as "mom and dad," for nearly three years. *Id.* at 72-74. R.C. attends kindergarten, and while he has slightly delayed development of his fine motor skills, he is doing well in school; his foster parents have also enrolled him in speech therapy. *Id.* at 73-74. R.C. has a foster brother with whom he has a positive and loving relationship and the two share a room. *Id.* at 72. R.C.'s foster father testified that he and his wife are committed to ensuring that the biological siblings continue to see each other even though they have been and will continue to be separated. *Id.* at 75.

Both sets of foster parents testified regarding behavioral issues Children experience following visits with Mother. *Id.* at 55-57, 74-75. R.C.'s foster father reported that R.C. is also sometimes sad following visits with Mother, but that R.C. is typically able to discuss his emotions with him and that this helps resolve any issues. *Id.* at 75.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that Children are bonded to their foster parents, that they provide Children with love, comfort, and security and fully meet their educational, developmental, emotional, and other needs. While there was some evidence

that Children share a bond with Mother, the record does not reflect that it is a necessary and beneficial bond, and we find no abuse of discretion in the orphans' court's determination that Children will not be irreparably harmed by terminating Mother's parental rights. ***See K.T.***, 296 A.3d at 1113. Accordingly, we conclude that the orphans' court did not err in determining that Children's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. As the orphans' court's determination pursuant to section 2511(b) is supported by the record, we must affirm the decrees terminating Mother's parental rights to Children. ***See C.M.***, 255 A.3d at 358-59.

Decrees affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/19/2026